LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (Bar No. 144074)
dalekgalipo@yahoo.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, California 91367
Tel:   (818) 347-3333
Fax:   (818) 347-4118

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.V., a minor, by and through guardian *ad litem* Rosalia Adan, individually and as successor in interest to Victor Valencia, deceased; VICTOR R. VALENCIA and CLARA QUESADA, individually,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES; COLIN LANGSDALE; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Unlawful Detention and Arrest (42 U.S.C. § 1983)<br>2. Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)<br>3. Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)<br>4. Fourteenth Amendment—Substantive Due Process<br>5. Municipal Liability—Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)<br>6. Municipal Liability—Ratification (42 U.S.C. § 1983)<br>7. Municipal Liability—Failure to Train (42 U.S.C. § 1983)<br>8. False Arrest/False Imprisonment<br>9. Battery (wrongful death and survival)<br>10. Negligence (wrongful death and survival)<br>11. Violation of Cal. Civil Code § 52.1<br><br>**DEMAND FOR JURY TRIAL** |

## **COMPLAINT FOR DAMAGES**

COME NOW Plaintiffs V.V., by and through guardian *ad litem* Rosalia Adan, individually and as the successor in interest to DECEDENT Victor Valencia, and Victor Valencia and Clara Quesada, in each case individually, for their Complaint against Defendants Colin Langsdale, City of Los Angeles and Does 1-10, inclusive, and allege as follows:

## **JURISDICTION AND VENUE**

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## **INTRODUCTION**

3.      This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal officer-involved shooting of Plaintiffs' father and son ("DECEDENT") on January 11, 2020.

///

///

///

# PARTIES

4.     At all relevant times, DECEDENT was an individual residing in the City of Palms, California. At the time of DECEDENT's death, DECEDENT was suffering from a mental illness.

5.     Plaintiff V.V. (a minor) is an individual residing in Los Angeles, California and is the natural child of DECEDENT.  V.V., by and through guardian *ad litem* Rosalia Adan, sues in his individual capacity as the son of DECEDENT and also as the successor in interest to DECEDENT.  V.V. seeks both survival and wrongful death damages under federal and state law.

6.     Plaintiff VICTOR R. VALENCIA ("VALENCIA") is and was, at all times pertinent hereto, an individual residing in the City of Los Angeles, California, and is DECEDENT's natural father.  VALENCIA brings claims under state and federal law in his individual capacity and sues as the natural father of DECEDENT. VALENCIA seeks damages to the extent permitted by law.

7.     Plaintiff CLARA QUESADA ("QUESADA") is and was, at all times pertinent hereto, an individual residing in the City of Los Angeles, California, and is DECEDENT's natural mother.  QUESADA brings claims under state and federal law in her individual capacity.  QUESADA seeks damages to the extent permitted by law.

8.     At all relevant times, Defendant CITY OF LOS ANGELES ("CITY") is and was a municipal corporation existing under the laws of the State of California. CITY is a chartered subdivision of the State of California with the capacity to be sued.  CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the Los Angeles Police Department ("LAPD") and its agents and employees.  At all relevant times, Defendant CITY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the LAPD and its employees and agents

complied with the laws of the United States and of the State of California.  At all relevant times, CITY was the employer of Defendants LANGSDALE and DOES 1-10.

9.     Defendant COLIN LANGSDALE ("LANGSDALE") is a police officer working for the LAPD.  At all relevant times, LANGSDALE was acting under color of law within the course and scope of his duties as police officer for the LAPD.  LANGSDALE was acting with the complete authority and ratification of his principal, Defendant CITY, at all relevant times.

10.     Defendants DOES 1-6 ("DOE OFFICERS") are police officers working for the LAPD.  At all relevant times, DOE OFFICERS were acting under color of law within the course and scope of their duties as police officers for the LAPD.  At all relevant times, DOE OFFICERS were acting with the complete authority and ratification of their principal, Defendant CITY.

11.     Defendants DOES 7-10 are managerial, supervisorial, and policymaking employees of the CITY/LAPD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the CITY/LAPD.  DOES 7-10 were acting with the complete authority and ratification of their principal, Defendant CITY.

12.     On information and belief, LANGSDALE and DOES 1-10 were residents of the CITY of Los Angeles.

13.     In doing the acts and failing and omitting to act as hereinafter described, Defendants LANGSDALE and DOE OFFICERS were acting on the implied and actual permission and consent of Defendants DOES 7-10 and the CITY.

14.     In doing the acts and failing and omitting to act as hereinafter described, Defendants LANGSDALE and DOES 1-10 were acting on the implied and actual permission and consent of the CITY.

15.     The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names.  Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

16.     At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

17.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity.  Moreover, Defendants and their agents ratified all of the acts complained of herein.

18.     LANGSDALE and DOES 1-10 are sued in their individual capacity.

19.     On June 11, 2020, Plaintiffs QUESADA and VALENCIA filed comprehensive and timely claims for damages with the CITY of Los Angeles pursuant to applicable sections of the California Government Code.  These claims were rejected on September 4, 2020.

20.     Plaintiff V.V. is a minor and V.V. has submitted a late claim, along with an application to file a late claim, to the CITY.  Pursuant to California Government Code Section 911.4, the City of Los Angeles must accept V.V.'s late claim up until January 11, 2021, which is one year after the date of the shooting of DECEDENT.

**<u>FACTS COMMON TO ALL CLAIMS FOR RELIEF</u>**

21.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 20 of their Complaint with the same force and effect as if fully set forth herein.

22.     At the time of the shooting incident giving rise to this lawsuit, DECEDENT was a 31 year-old male with a mental illness.

23.     On January 11, 2020, DECEDENT was walking to his sister's house near South Venice Boulevard and Tuller Avenue in the City of Palms, California.

24.     Defendant LANGSDALE responded to a dispatch call regarding an individual (DECEDENT) who was acting erratic and displaying signs of a mental illness.  LANGSDALE saw DECEDENT near the intersection of South Venice Blvd and Tuller Avenue.

25.     LANGSDALE approached DECEDENT.  At that time, LANGSDALE did not have reasonable suspicion to believe that DECEDENT had violated the law.

26.     LANGSDALE ignored clear signs of DECEDENT's mental illness and failed to de-escalate this situation involving a mentally ill individual.

27.     While acting under color of state law and in the course and scope of his duties as a police officer for the LAPD, LANGSDALE escalated the situation and fired multiple shots at DECEDENT, striking and injuring DECEDENT and ultimately killing him.

28.     At all relevant times, including during all of the shots, DECEDENT was unarmed and posed no immediate threat of death or serious bodily injury to any person.  Therefore, the shooting was excessive and unreasonable.  The object that DECEDENT had during this incident was a bicycle handle.

29.     On information and belief, LANGSDALE failed to give DECEDENT a warning that deadly force would be used prior to shooting.  The shooting violated

LANGSDALE'S training and standard police officer training, including violating training with respect to the use of deadly force.

30.     After being shot with rounds from a lethal firearm, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering, and was a contributing cause of DECEDENT'S death.

31.     Plaintiff V.V. is DECEDENT's successor in interest as defined in Section 377.11 of the California Code of Civil Procedure and succeeds to DECEDENT's interest in this action as the natural child of DECEDENT.

32.     Plaintiffs incurred funeral and burial expenses as a result of the shooting.

## FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Unlawful Detention and Arrest
### (42 U.S.C. § 1983)

(By Plaintiff V.V. against Defendant LANGSDALE)

33.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 32 of this Complaint with the same force and effect as if fully set forth herein.

34.     The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable detention in violation of their right to privacy.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.  LANGSDALE violated DECEDENT's right to be free from unreasonable search and seizures, which is guaranteed to him by the Fourth

Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

35.     At all relevant times, the LANGSDALE acted under color of state law. LANGSDALE had no reasonable suspicion to detain DECEDENT and no probable cause to arrest him.  In addition to the detention itself being unreasonable, the scope and manner of the detention was unreasonable.  It was not necessary to use force against DECEDENT in order to take him into custody, if that were even necessary.

36.     The conduct of the LANGSDALE was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to LANGSDALE.  As a direct result of the unreasonable detention and arrest, DECEDENT experienced severe pain, suffering and the loss of life and enjoyment of life, for which he, through his successor in interest, is entitled to recover damages.

37.     Plaintiff V.V. brings this claim as a successor-in-interest to DECEDENT.  Plaintiff V.V. seeks survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.  Plaintiffs also seek attorney's fees under this claim.

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure—Excessive Force (42 U.S.C. § 1983)

(By Plaintiff V.V. Against Defendant LANGSDALE)

38.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 37 of their Complaint with the same force and effect as if fully set forth herein.

39.     On January 11, 2020, DECEDENT was walking to his sister's house near South Venice Boulevard and Tuller Avenue in the City of Palms, California.

40.   Defendant LAPD Sergeant LANGSDALE responded to a dispatch call regarding an individual (DECEDENT) who was acting erratic and displaying signs of a mental illness.  LANGSDALE saw DECEDENT near the intersection of South Venice Blvd and Tuller Avenue.

41.   LANGSDALE approached DECEDENT.  At that time, LANGSDALE did not have reasonable suspicion to believe that DECEDENT had violated the law.

42.   LANGSDALE ignored clear signs of DECEDENT's mental illness and also failed to de-escalate this situation involving a mentally ill individual.

43.   While acting under color of state law and in the course and scope of his duties as a police officer for the LAPD, LANGSDALE escalated the situation and fired multiple shots at DECEDENT, striking and injuring DECEDENT and ultimately killing him.

44.   At all relevant times, including during all of the shots, DECEDENT was unarmed and posed no immediate threat of death or serious bodily injury to any person.  Therefore, the shooting was excessive and unreasonable.  The object that DECEDENT had during this incident was a bicycle handle.

45.   On information and belief, LANGSDALE failed to give DECEDENT a warning that deadly force would be used prior to shooting.  The shooting violated LANGSDALE'S training and standard police officer training.

46.   Defendants' unjustified shooting and other uses of force against DECEDENT deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

47.   As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death at the hospital after the shooting, loss of enjoyment of life, loss of life, and lost earning capacity.

48.     The conduct of LANGSDALE was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT, and therefore warrants the imposition of exemplary and punitive damages as to LANGSDALE.

49.     Plaintiff V.V. brings this claim as a successor-in-interest to DECEDENT.  Plaintiff V.V. seeks survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.  Plaintiffs also seek attorney's fees under this claim.

## THIRD CLAIM FOR RELIEF

**Unreasonable Search and Seizure—Denial of Medical Care (42 U.S.C. § 1983)**

(By Plaintiff V.V. against LANGSDALE and DOE OFFICERS)

50.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 49 of their Complaint with the same force and effect as if fully set forth herein.

51.      After being shot with a lethal firearm, DECEDENT was immobile, bleeding profusely, and in obvious and critical need of emergency medical care and treatment.  Defendants did not timely summon medical care or permit medical personnel to treat DECEDENT.  The delay of medical care to DECEDENT caused DECEDENT extreme physical and emotional pain and suffering and was a contributing cause of DECEDENT's death.

52.     The denial of medical care by LANGSDALE and DOE OFFICERS deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

53.     As a result of the foregoing, DECEDENT suffered great physical pain and emotional distress up to the time of his death, loss of enjoyment of life, loss of life, and loss of earning capacity.

54.     LANGSDALE and DOE OFFICERS knew that failure to provide timely medical treatment to DECEDENT could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing DECEDENT great bodily harm and death.

55.     DECEDENT survived for a period of time after incident.  He was transported from the scene of the shooting to the hospital, where he died on the date of the shooting.

56.     The conduct of LANGSDALE and DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to LANGSDALE and DOE OFFICERS.

57.     Plaintiff V.V. brings this claim as a successor-in-interest to DECEDENT.  Plaintiff V.V. seeks survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.  Plaintiffs also seek attorney's fees under this claim.

## **FOURTH CLAIM FOR RELIEF**

### **Fourteenth Amendment-Substantive Due Process (42 U.S.C. § 1983)**

(By all Plaintiffs against LANGSDALE)

58.     Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.     LANGSDALE acted under color of state law at all relevant times.

60.     By engaging in the foregoing conduct, LANGSDALE deprived Plaintiffs of their rights to a familial relationship with DECEDENT in such a manner as to shock the conscience, including by using excessive and unreasonable deadly force against him and by denying him medical care, all of which caused injuries that resulted in DECEDENT's death.  This conduct violated Plaintiffs'

rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

61.     By engaging in the foregoing conduct, LANGSDALE acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective. LANGSDALE is liable to Plaintiffs for the interference with their familial relationship.

62.     All Plaintiffs bring this claim individually and seek wrongful death damages under this claim.  Plaintiffs also seek attorney's fees under this claim.

## FIFTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(By all Plaintiffs against Defendants CITY and DOES 7-10)

63.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 62 of their Complaint with the same force and effect as if fully set forth herein.

64.     LANGSDALE acted under color of law at all relevant times, including during the shooting.

65.     DOE OFFICERS acted under color of law at all relevant times.

66.     When LANGSDALE unlawfully detained and arresed DECEDENT and then fatally shot DECEDENT while he was unarmed and committing no crime, failed to de-escalate a situation involving a mentally ill person, and also when LANGSDALE denied DECEDENT prompt and necessary medical care after he shot DECEDENT, LANGSDALE acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

67.     When DOE OFFICERS denied DECEDENT prompt and necessary medical care after the shooting of DECEDENT, DOE OFFICERS acted pursuant to

an expressly adopted official policy or a longstanding practice or custom of Defendant CITY.

68.     On information and belief, LANGSDALE was not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

69.     On information and belief, DOE OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

70.     Defendants DOES 7-10, together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

> (a)     Using excessive force, including excessive use of deadly force;
>
> (b)     Providing inadequate training regarding the use of deadly force, and providing inadequate training with respect to handling situations involving mentally ill individuals and de-escalating a situation involving a mentally ill individual;
>
> (c)     Employing and retaining as police officers individuals such as LANGSDALE, whom Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;
>
> (d)     Inadequately supervising, training, controlling, assigning, and disciplining CITY officers and other personnel, including LANGSDALE, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including a failure to train with

respect to the use of deadly force and de-escalating situations involving mentally ill individuals;

(e) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by CITY officers;

(f) Failing to adequately discipline CITY officers for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

(g) Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

(h) Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

(i) Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which law enforcement officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

(j) Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of force, including by failing to discipline, retrain, investigate,

terminate, and recommend officers for criminal prosecution who participate in shootings of unarmed people.

71.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

72.    Defendants CITY and DOES 7-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, Defendants CITY and DOES 7-10, condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

73.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 7-10 acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's and Plaintiffs' constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and DOES 7-10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiffs.

74.    The following are only a few examples of continued misconduct by LAPD officers, which indicate the CITY's failure to properly train its police officers:

a) In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), a unanimous jury awarded Mr. Contreras $5,700,000 after

finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

b) In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, a unanimous jury awarded the plaintiffs $3,215,000 after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

c) In *Herrera, et al. v. City of Los Angeles, et al.*, case number 16-cv-02719-DSF (SHx), a unanimous jury found that the involved LAPD officer used excessive force against Ruben Herrera when he shot him and awarded the Plaintiffs a total of $3,500,000.

d) In *Mears, et al. v. City of Los Angeles, et al.*, case number 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers, and awarded the plaintiffs a total of $5,500,000 after finding that the involved officers' use of deadly force was excessive and unreasonable.

e) In *Hernandez, et al. v. City of Los Angeles, et al.*, case no. 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive unreasonable force and restraint against Alex Jimenez, who was unarmed.

f) In *L.D., et al. v. City of Los Angeles*, case no., 2:16-cv-04626-PSG, a unanimous jury found that certain officers used excessive and unreasonable force against Cesar Frias and awarded the Plaintiffs $4,500,000.

75.     Accordingly, Defendants CITY and DOES 7-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

76.     Plaintiff V.V. brings this claim individually and as a successor-in-interest to DECEDENT.  Plaintiff V.V. seeks wrongful death and survival damages

on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

77.     Plaintiffs VALENCIA and QUESADA bring this claim individually based on the violations of their Fourteenth Amendment rights, and seek wrongful death damages under this claim.  Plaintiffs also seek attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

### Municipal Liability—Ratification (42 U.S.C. § 1983)

(By all Plaintiffs against Defendants CITY and DOES 7-10)

78.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 77 of this Complaint with the same force and effect as if fully set forth herein.

79.     LANGSDALE's acts, including unlawfully detaining and arresting DECEDENT, fatally shooting DECEDENT while he was unarmed and committing no crime, failing to give a warning that deadly force would be used prior to shooting, failing to de-escalate a situation involving a mentally ill person, and then denying DECEDENT prompt and necessary medical care, deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

80.     At all relevant times, LANGSDALE was acting under color of law.

81.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning LANGSDALE's acts, ratified LANGSDALE's acts and the bases for them.  Upon information and belief, the final policymakers knew of and specifically approved of LANGSDALE's acts, including the shooting.  Upon information and belief, the final policymaker(s) have determined that LANGSDALE's actions were "within policy."

82.     As a direct and proximate result of the aforementioned conduct, DECEDENT endured pain and suffering and lost his life, his enjoyment of life, and his earning capacity.

83.     Plaintiff V.V. brings this claim individually and as a successor-in-interest to DECEDENT.  Plaintiff V.V. seeks wrongful death and survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

84.     Plaintiffs VALENCIA and QUESADA bring this claim individually and seek wrongful death damages under this claim.  Plaintiffs also seek attorney's fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Train (42 U.S.C. § 1983)

(Against Defendants CITY and DOES 7-10)

85.     Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 84 of their Complaint with the same force and effect as if fully set forth herein.

86.     Defendant LANGSDALE acted under color of law.

87.     LANGSDALE's acts, including unlawfully detaining and arresting DECEDENT, fatally shooting DECEDENT while he was unarmed and committing no crime, failing to give a warning that deadly force would be used prior to shooting, and then denying DECEDENT prompt and necessary medical care, deprived DECEDENT and Plaintiffs of their particular rights under the United States Constitution.

88.     The training policies of Defendant CITY were not adequate to train its officers to handle the usual and recurring situations with which they must deal.  This includes training polices with respect to the use of the use of force, including deadly

force, and with respect to handling and de-escalating situations involving mentally ill individuals.

89.    Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

90.    The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiffs' rights by LANGSDALE; that is, the defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

91.    The following are only a few examples of continued misconduct by police officers working for the CITY, which indicate the CITY's failure to properly train its police officers:

      g) In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), a unanimous jury awarded Mr. Contreras $5,700,000 after finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

      h) In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, a unanimous jury awarded the plaintiffs $3,215,000 after finding that the involved LAPD officers' use of deadly force was excessive and unreasonable.

      i) In *Herrera, et al. v. City of Los Angeles, et al.*, case number 16-cv-02719-DSF (SHx), a unanimous jury found that the involved LAPD officer used excessive force against Ruben Herrera when he shot him and awarded the Plaintiffs a total of $3,500,000.

      j) In *Mears, et al. v. City of Los Angeles, et al.*, case number 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers, and awarded the plaintiffs a total of $5,500,000 after finding that the involved officers' use of deadly force was excessive and unreasonable.

k) In *Hernandez, et al. v. City of Los Angeles, et al.*, case no. 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive unreasonable force and restraint against Alex Jimenez, who was unarmed.

l) In *L.D., et al. v. City of Los Angeles*, case no., 2:16-cv-04626-PSG, a unanimous jury found that certain officers used excessive and unreasonable force against Cesar Frias and awarded the Plaintiffs $4,500,000.

92.    By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.  The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

93.    Accordingly, Defendants CITY and DOES 7-10 each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

94.    Plaintiff V.V. brings this claim individually and as a successor-in-interest to DECEDENT.  Plaintiff V.V. seeks survival damages and wrongful death damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

95.    Plaintiffs VALENCIA and QUESADA bring this claim individually and seek wrongful death damages under this claim based on the violation of their Fourteenth Amendment rights.  Plaintiffs also seek attorney's fees and costs under this claim.

## EIGHTH CLAIM FOR RELIEF

### False Arrest / False Imprisonment

(Survival and Wrongful Death)

(Against LANGSDALE and CITY)

96.     Plaintiffs re-allege and incorporates by reference herein paragraphs 1 through 95 of this Complaint.

97.     LANGSDALE detained DECEDENT without reasonable suspicion and arrested him without probable cause.  Not only was the detention itself unreasonable, but the scope and manner of the detention was unreasonable as set forth above.  LANGSDALE intentionally restricted DECEDENT's freedom of movement for an appreciable amount of time.  DECEDENT did not consent to the restriction of his freedom of movement.  DECEDENT was unarmed and committing no crime at all relevant times.

98.     As an actual and proximate result of LANGSDALE's false arrest/false imprisonment of DECEDENT and the force used thereafter, DECEDENT died, and as a result, Plaintiffs have sustained pecuniary loss resulting from the loss of companionship, comfort, support, society, care and services of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.  Accordingly, Plaintiffs are entitled to compensatory damages on this claim.

99.     Defendants committed the aforementioned acts and omissions knowingly, willfully, maliciously, with the expressed intent to harm DECEDENT and with conscious or reckless disregard for DECEDENT's rights.  By reason thereof, Plaintiff seeks punitive and exemplary damages from LANGSDALE in an amount according to proof at trial.

100.   Defendant CITY is vicariously liable for the wrongful acts of LANGSDALE pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

101.   Plaintiff V.V. brings this claim individually and as a successor-in-interest to DECEDENT.  Plaintiff V.V. seeks wrongful death and survival damages on this claim, including for DECEDENT's loss of life and loss of enjoyment of life.

102.   Plaintiffs VALENCIA and QUESADA bring this claim individually and seek wrongful death damages under this claim, including funeral and burial expenses.

### NINTH CLAIM FOR RELIEF

**Battery** (wrongful death and survival claim)

(By all Plaintiffs against Defendants LANGSDALE and CITY)

103.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 102 of their Complaint with the same force and effect as if fully set forth herein.

104.   LANGSDALE, while working and acting within the course and scope of his duties as a police officer for the LAPD, shot DECEDENT.  At the time of the shooting, DECEDENT was unarmed and posed no immediate threat of death or serious bodily injury to LANGSDALE or to anyone else.  The shooting was excessive and objectively unreasonable.

105.   As a direct and proximate result of the shots fired by LANGSDALE as alleged above, DECEDENT sustained injuries, died from his injuries and also lost his earning capacity.  As a direct and proximate result of LANGSDALE'S shots and other misconduct as set forth herein, DECEDENT suffered survival damages pursuant to Code of Civil Procedure Section 377.34.

106.   The CITY is vicariously liable for the wrongful acts of LANGSDALE pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

107.   The conduct of LANGSDALE was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and

1    DECEDENT, entitling Plaintiffs, individually and as the successors in interest to

2    DECEDENT, to an award of exemplary and punitive damages as to LANGSDALE.

3       108.   Plaintiff V.V. brings this claim individually and as a successor-in-

4    interest to DECEDENT.  Plaintiff V.V. seeks wrongful death and survival damages

5    on this claim.

6       109.   Plaintiffs VALENCIA and QUESADA bring this claim individually

7    and seek wrongful death damages under this claim, including funeral and burial

8    expenses.

9

10                     **TENTH CLAIM FOR RELIEF**

11              **Negligence** (wrongful death and survival claim)

12                      (Against all Defendants)

13       110.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1

14   through 109 of their Complaint with the same force and effect as if fully set forth

15   herein.

16       111.   Police officers, including LANGSDALE, have a duty to use reasonable

17   care to prevent harm or injury to others.  This duty includes using appropriate

18   tactics, giving appropriate commands, giving warnings, and not using any force

19   unless necessary, using less than lethal options, and only using deadly force as a last

20   resort.

21       112.   LANGSDALE and DOE OFFICERS breached this duty of care.  The

22   actions and inactions of Defendants LANGSDALE and DOE OFFICERS were

23   negligent and reckless, including but not limited to:

24              (a)    the failure to properly and adequately assess the need to use

25                     deadly force against DECEDENT;

26              (b)    the negligent tactics and handling of the situation with

27                     DECEDENT, including pre-shooting negligence;

28

      (c)    the negligent use of deadly force against DECEDENT, including negligently shooting at a mentally ill individual;

      (d)    the failure to provide prompt medical care to DECEDENT;

      (e)    the failure to properly train and supervise LANGSDALE with respect to the use of deadly force;

      (f)    the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT; and

      (g)    the negligent communication of information during the incident.

113.   As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died.  Also as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

114.   The CITY is vicariously liable for the wrongful acts of LANGSDALE and Defendants DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject her or her to liability.

115.   Plaintiff V.V. brings this claim individually and as a successor-in-interest to DECEDENT.  Plaintiff V.V. seeks wrongful death and survival damages on this claim, including for DECEDENT's loss of life and loss of enjoyment of life.

116.   Plaintiffs VALENCIA and QUESADA bring this claim individually and seek wrongful death damages under this claim, including funeral and burial expenses.

# ELEVENTH CLAIM FOR RELIEF

## (Violation of Cal. Civil Code § 52.1)

(Against all Defendants)

117.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 116 of their Complaint with the same force and effect as if fully set forth herein.

118.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from intentionally interfering with a person's constitutional rights, which can be shown by a reckless disregard for that person's constitutional rights.  Here, LANGSDALE acted with a reckless disregard for DECEDENT's constitutional rights when he shot him, which shows LANGSDALE's intent to violate DECEDENT's constitutional rights.

119.   On information and belief, LANGSDALE, while working for the CITY and acting within the course and scope of his duties, intentionally committed and attempted to commit acts of violence against DECEDENT, including fatally shooting him with a firearm without justification or excuse and denying him necessary medical care.

120.   When LANGSDALE fatally shot DECEDENT with a firearm, he interfered with his constitutional rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

121.   On information and belief, LANGSDALE intentionally shot DECEDENT and violated DECEDENT's constitutional rights.  On information and belief, DECEDENT reasonably believed and understood that LANGSDALE intended to shot DECEDENT and intentionally shot him to violate his constitutional rights and/or to prevent him from exercising his constitutional rights.

LANGSDALE's actions against DECEDENT were unreasonable and showed reckless disregard for DECEDENT's constitutional rights.

122. The conduct of LANGSDALE was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

123. The CITY is vicariously liable for the wrongful acts of LANGSDALE and Defendants DOES 1-10 pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability. Defendants DOES 7-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

124. The conduct of LANGSDALE was malicious, wanton, oppressive, and accomplished with a conscious disregard for DECEDENT's and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to LANGSDALE.

125. Plaintiff V.V. brings this claim as a successor-in-interest to DECEDENT. Plaintiff V.V. seeks survival damages on this claim, including for DECEDENT's injuries, pre-death pain and suffering and loss of life and loss of enjoyment of life.

126. Plaintiffs also seek attorney's fees and a multiplier under this claim pursuant to Cal. Civ. Code §52 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Victor Valencia, Clara Quesada, and V.V. request entry of judgment in their favor and against Defendants Colin Langsdale, the City of Los Angeles and Does 1-10, inclusive, as follows:

A. For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount to be proven at trial;

B. For funeral and burial expenses, and loss of financial support;

C. For punitive damages against the individual defendants in an amount to be proven at trial;

D. For interest;

E. For reasonable attorneys' fees, including litigation expenses;

F. For costs of suit; and

G. For such further other relief as the Court may deem just, proper, and appropriate.

DATED: February 26, 2021                    LAW OFFICES OF DALE K. GALIPO

_____

Dale K. Galipo
*Attorney for Plaintiffs*

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2      Plaintiffs hereby demand a trial by jury.

3

4   DATED: February 26, 2021               LAW OFFICES OF DALE K. GALIPO

5

6

7

8                                          Dale K. Galipo

9                                          *Attorney for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES