LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
E-mail: dalekgalipo@yahoo.com
Renee V. Masongsong, Esq. (SBN 281819)
Email: rvalentine@galipolaw.com
Ranhee Lee, Esq. (SBN 330979)
Email: rlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4111

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| V.V., a minor, by and through guardian ad litem Rosalia Adan, individually and as successor in interest to Victor Valencia, deceased.<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; COLIN LANGSDALE,<br><br>Defendants. | Case No. 2:21-cv-01889-MCS-PD<br><br>*Hon. Mark C. Scarsi*<br><br>**DECLARATION OF RANHEE LEE IN SUPPORT OF PLAINTIFF'S UNOPPOSED *EX PARTE* APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF MINOR PLAINTIFF V.V.** |

# DECLARATION OF RANHEE LEE

1. I am an attorney licensed to practice law in the United States District Court for the Central District of California. I am one of the attorneys of record for the Plaintiff V.V. in this action. I have personal knowledge of the matters stated herein and would and could testify competently thereto if called. I make this declaration in support of Plaintiff V.V.'s *ex parte* application for approval of the compromise of the claims of minor plaintiff V.V. by and through his guardian *ad litem*, Rosalia Adan, individually and as a successor in interest to Victor Valencia, deceased.

2. Defendants are represented by Cory M. Brente, Senior Assistant City Attorney, and Colleen R. Smith, Deputy City Attorney, of Los Angeles City Attorney's office, 200 N. Main Street, 6th Floor, City Hall East, Los Angeles, California 90012; Tel: (213) 978-7027.

3. Defendants and their counsel do not oppose the filing of this Application on an *ex parte* basis, nor do Defendants and their counsel oppose the substance of this Application, including the proposed disbursement of funds.

4. This Application seeks approval of the compromise of Plaintiff V.V.'s claims on an *ex parte* basis because V.V.'s guardian *ad litem*, after consulting with an annuity broker, vetting insurance companies, and reviewing proposed annuity plans, has chosen an annuity the interest rate for which is going to expire if this petition is heard as a regularly-noticed motion. For that reason, filing this Application as a regularly-noticed motion may cause a decrease in payment benefits to the minor plaintiff. Further, the settlement was not formally approved until on or around December 19, 2022.

5. This timing also precluded Plaintiff from filing this Application as a regularly-noticed motion. Accordingly, Petitioner Rosalia Adan as guardian *ad litem* for minor plaintiff V.V. respectfully requests that this Court consider this Application on an *ex parte* basis.

6. Following the jury verdict, the parties met and conferred with respect to Plaintiff's anticipated motion for statutory attorneys' fees and Defendants' anticipated post-trial motion. During the meet and confer process, Plaintiff's counsel indicated their statutory attorneys' fees to be approximately $800,000 without a multiplier. As indicated in Plaintiff's motion for attorneys' fees filed, the statutory attorneys' fee amounts to approximately $ 1.1 million with 1.5 multiplier. Plaintiff's counsel agreed to resolve the case for the full amount awarded by the jury and agreed to a significant reduction in statutory attorneys' fees as part of the settlement, based on several mediations conducted by Richard Copeland on or around September 28, 2022 subsequent to the jury verdict. The settlement was formally approved by the Defendant City's proper authorities on or around December 19, 2022. The Stipulation for Settlement agreement obligates Defendant City of Los Angeles to pay to Plaintiff V.V. and his attorneys of record $2,500,000. The gross settlement amount of $2,500,000 includes the total amount of the jury award of $2,165,000 and the significantly reduced statutory attorneys' fee of $335,000

7. The nature of Plaintiff V.V.'s claims in this lawsuit is set forth in the operative complaint and the final pretrial conference order filed in this action. Plaintiff V.V.'s claims were tried on their merits in July 2022, and the jury awarded $2,165,000 prior to Plaintiff V.V. agreeing to settle his claims in September 2022. As part of the settlement in September 2022, Plaintiff's counsel agreed to significant reduction to the statutory attorneys' fees. The settlement agreement does not affect the amount owed to Plaintiff V.V.

8. Plaintiff V.V.'s damages in this case arise from (1) the injuries suffered by the decedent, for which Plaintiff V.V. can recover survival damages as a successor in interest; and (2) Plaintiff V.V. individual loss of the decedent's comfort, care, companionship, training, support, and guidance (wrongful death damages).

-3-
DECLARATION OF RANHEE LEE

9. Plaintiff's attorneys are requesting contingency attorneys' fees in the amount of 40 percent of the jury award of $2,165,000, which is $866,000.

10. The contingency retainer agreements between Plaintiff V.V. by and through his guardian *ad litem* Rosalia Adan and his respective attorneys provide for a 40 percent contingency fee.

11. Plaintiff's attorneys are also requesting reimbursement of advanced litigation costs in the total amount of $16,757.40.

12. Under the existing retainer agreements, Plaintiff's attorneys are due a 40 percent attorney recovery fee, plus reimbursement of advanced litigation costs. The contingency attorney fee award in this case is clearly justified, including by: the $2,165,000 verdict in Plaintiff's favor; attorney Dale K. Galipo's skill and experience in the civil rights field; two associate attorneys assigned to this case, including an experienced senior associate, Renee V. Masongsong; the difficulties and complexities of this case; the risk assumed by Plaintiff's counsel; and the time and expense of conducting the trial of this matter and opposing Defendants' post-trial motions after receiving a verdict in Plaintiff's favor. Plaintiff litigated this case for approximately one and a half years, and Defendants essentially made no settlement offer, forcing the case to trial. Plaintiff's attorneys devoted significant time to this case in order to achieve the verdict in Plaintiff's favor, including but not limited to: conducting extensive written discovery, which entailed multiple meet-and-confer efforts and over forty hours spent reviewing and analyzing audio/video recordings and thousands of pages investigative reports and photographs; conducting and/or participating in shooting officer deposition; investigating witnesses' whereabouts; retaining a police practices expert and preparing to cross-examine the expert witnesses disclosed by Defendants; filing motions *in limine*; preparing for the trial, and trying the case; opposing Defendants' post-trial motion; and participating in mediations.

13. This case involved a substantial amount of risk and time, especially because this is a civil rights case where the Defendant City had all the information about the officer-involved shooting incident since the day of the incident, and the Plaintiff had to initiate the lawsuit to get information from the Defendant City as to what happened. If Plaintiffs' attorneys were not awarded a significant compensatory fee in difficult civil rights cases of public importance, then attorneys would not be able to take such cases. In turn, plaintiffs such as V.V. would not be able to attract competent counsel who could achieve similar results. Moreover, in this case, Plaintiff's attorneys are specialized in civil rights cases with decades of experience in this area of law which make their time on the case extremely valuable. This is especially so given that Dale K. Galipo was the lead trial counsel in this instant case. Mr. Galipo's role was instrumental in prevailing at trial in that he has prevailed in approximately twenty jury trials in the last approximately five years. In year 2019, the Honorable Cormac K. Carney awarded Mr. Galipo an hourly rate of $1,000 under 42 U.S.C. § 1988 in the excessive force case where the plaintiffs prevailed and obtained a $3.4 million dollar jury verdict. In early of year 2020, the jury awarded Mr. Galipo's clients a verdict of $4.5 million, and the judge of the case, the Honorable Philip Gutierrez, awarded Mr. Galipo an hourly rate of $1,100 in ruling on the statutory attorney fees motion brought post-trial pursuant to 42 U.S.C. § 1988. Several other courts have also awarded an hourly rate of $1,100 for Mr. Galipo's statutory attorney fees, including the Honorable Jesus G. Bernal in the case *French v. City of Los Angeles* in October 2021 where the jury awarded the plaintiffs in that matter $17,002,000 at trial. Accordingly, Plaintiff V.V. and his attorneys submit that Plaintiff's attorneys are deserving of the requested 40 percent contingency attorney recovery fee in this case with respect to V.V.'s portion of the jury award.

14. As stated above, the gross amount of the settlement is $2,500,000, including $335,000 in statutory attorney's fees which amounted to a significant

reduction of statutory fees. Also as indicated above, the proceeds apportioned for minor Plaintiff V.V. and his attorneys is $2,165,000 which is the same amount that the jury awarded. After deducting requested contingency attorneys' fees of $866,000 and costs in the amount of $16,757.40 with respect to the jury award as agreed in the retainer agreement, the total net settlement proceeds to V.V. is $1,282,242.60.

15. It is requested that $1,282,242.60 be used to fund a structured settlement annuity for Plaintiff V.V. As part of the structured settlement, Petitioner Ms. Adan chose a Proposal which is attached as "Exhibit A" to the Declaration of Ranhee Lee. Under the proposal set forth in "Exhibit A," the total amount that Plaintiff V.V. shall directly receive after the final payment is made to him in 2047 is $2,930,000.

16. V.V.'s guardian *ad litem*, Petitioner Rosalia Adan, has reviewed the proposed annuity and disbursement schedules for V.V. set forth in "Exhibit A" and believes that the proposal set forth in "Exhibit A" is in the best interest of V.V.

17. This motion does not seek an order for payment of money to a special needs trust.

18. This petition was prepared by attorney Ranhee Lee (California State Bar Number 330979), of the Law Offices of Dale K. Galipo, located at 21800 Burbank Boulevard, Suite 310, Woodland Hills, California, which represents Plaintiff V.V. in this action.

19. Plaintiff V.V.'s attorneys (the Law Offices of Dale K. Galipo) did not become concerned with this matter at the instance of any party against whom the claim of said minor is asserted.

20. Plaintiff V.V.'s attorneys (the Law Offices of Dale K. Galipo) are not employed by any other party or any insurance carrier involved in the matter.

21. Plaintiff V.V.'s attorneys (the Law Offices of Dale K. Galipo) have not to date received any compensation for their services in connection herewith from any person.

22. Plaintiff V.V. is the only Plaintiff in the above-referenced action that prevailed at trial. Plaintiff's attorneys (the Law Offices of Dale K. Galipo) expect to receive $866,000 in contingency attorneys' fees as set forth above.

23. Plaintiff's attorneys accepted this engagement for a contingency fee, plus reimbursement for any costs advanced. The retainer agreement provides for a 40 percent attorney fee if any recovery is made on the case. The approximate lodestar amount of Plaintiffs' statutory attorneys' fees, with a 1.5 multiplier, is $1.11 million, but Plaintiffs' counsel agreed to settle this action for the amount of the jury award and a significant reduction in statutory attorneys' fees.

24. Attached hereto as "Exhibit B" is a group of documents from Metropolitan Tower Life Insurance Company, including the ratings and sample guarantee.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed this 19th day of January 2023, at Woodland Hills, California.

_____/s/ Ranhee Lee_____
Ranhee Lee

# Exhibit "A"

## ATTACHMENT TO MINORS COMPROMISE

From the total gross settlement, the City of Los Angeles (hereinafter referred to as "Defendant") has agreed to issue a separate settlement check in the amount of $1,282,242.60 to fund the structured annuity for the minor Plaintiff V.V., by and through his Guardian ad Litem Rosalia Adan.

The annuity check will be made payable to MetLife Assignment Company, Inc. (hereinafter referred to as "Assignee") which will provide the following periodic payments in Section A to be made by Metropolitan Tower Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

The details of the periodic payments will be set forth in section (A), hereinbelow. All sums and periodic payments set forth in the section entitled Payments constitute damages on account of personal physical injuries or physical illness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

    A)    Payments:

### Periodic payments payable to V.V. :

$45,000.00 payable semi-annually, guaranteed for 5 year(s) only, beginning on 09/29/2030, with the last guaranteed payment on 03/29/2035

$50,000.00 guaranteed lump sum payable on 09/29/2034
$100,000.00 guaranteed lump sum payable on 09/29/2036
$175,000.00 guaranteed lump sum payable on 09/29/2038
$405,000.00 guaranteed lump sum payable on 09/29/2040
$750,000.00 guaranteed lump sum payable on 09/29/2042
$1,000,000.00 guaranteed lump sum payable on 09/29/2047

The Plaintiff agrees that he has not received or relied upon any advice or representation as to the tax effect of this Agreement. In accordance therewith, the Plaintiff agrees to hold harmless the Defendant from any losses to Plaintiff incurred, including any loss by reason of a determination by the Internal Revenue Service or other tax authority that said settlement monies do not constitute, in whole or part, damages on account of personal injury or sickness.

The Defendant will execute a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Assignee, of the Defendant's liability to make the periodic payments described in paragraph (A) herein. Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendant from such obligations hereunder as are assigned to Assignee.

The Defendant shall have the right to fund its liability to make periodic payments by purchasing

a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from the Annuity Carrier.

The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check or via wire transfer, in the amount specified above.

The Plaintiff hereto expressly understands and agrees that upon the qualified assignment being made by the Defendant to Assignee as authorized by this agreement, all of the duties and responsibilities to make the periodic payments otherwise imposed upon the Defendant by this agreement shall instead be binding upon Assignee, and the Defendant shall be released from all obligations to make said periodic payments, and Assignee shall at all times remain directly and solely responsible for and shall receive credit for all such payments made to Plaintiff. It is further understood and agreed that, upon such a qualified assignment, Assignee assume all of the duties and responsibilities of the Defendant to make the periodic payments.

Payments hereunder cannot be accelerated, deferred, increased or decreased by the Plaintiff and/or Assignee and no part of the payment(s) called for herein or any assets of the Defendant and/or Assignee is to be subject to execution of any legal process for any obligation in any manner. Furthermore, the Plaintiff shall not have the power to sell or mortgage or encumber the same, or any part thereof, anticipate the same, or any part thereof, by assignment or otherwise.

The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership. The Assignee will have the Annuity Carrier mail payments directly to the Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

# Exhibit ''B''



Metropolitan Tower Life Insurance Company
New York, NY

## EVIDENCE OF GUARANTEE

Pursuant to authority granted by its Board of Directors, Metropolitan Tower Life Insurance Company ("MetLife") has agreed to guarantee any payment or other obligation required to be made or performed by MetLife Assignment Company, Inc., a wholly owned subsidiary of MetLife, on or after May 15, 2017 in connection with the purchase of annuities from MetLife.

Andrew T. Aoyama
Senior Vice President
Metropolitan Tower Life Insurance Company

**MetLife** | Retirement & Income Solutions

Financial Quality

# Metropolitan Tower Life Insurance Company (Met Tower Life)

A wholly owned subsidiary of MetLife, Inc.[1]
Data as of December 31, 2019

## Size and strength of Met Tower Life

Met Tower Life can assume responsibility for annuity contracts of all sizes.

On a statutory accounting basis, Met Tower Life has approximately $26.3 billion in total admitted assets (including separate accounts and approximately $3.1 billion pledged as collateral for any loan or guaranty or which were otherwise not available to pay losses and claims or were not held to protect its policyholders or creditors) and approximately $24.8 billion in liabilities (as of December 31, 2019).

| Met Tower Life's size (As of December 31, 2019) | ($ millions) | | ($ millions) |
|---|---|---|---|
| General account total cash & invested assets | $18,807 | Liabilities | $24,812 |
| Total general account assets | $19,568 | Capital & surplus | $1,503 |
| Separate account assets | $6,747 | Total liabilities, capital and surplus (excluding AVR) | $26,315 |
| **Net admitted assets** | **$26,315** | Asset valuation reserve (AVR) | $182 |
| | | **Total Capital*** | **$1,685** |

*Total capital is comprised of "capital & surplus" and "asset valuation reserve (AVR)."

**Note:** Categories may not equal total due to rounding.

## Rating agency assessments

Metropolitan Tower Life Insurance Company's financial strength and claims-paying ability is currently rated "Superior", "Very strong" or "High quality" by the following major rating agencies.[2]

| Agency | Financial strength rating |
| --- | --- |
| A.M. Best | A+ (Superior) |
| Fitch | AA– (Very strong) |
| Moody's | Aa3 (High quality) |
| Standard & Poor's | AA– (Very strong) |

## Capital to protect benefit payments

Met Tower Life's total statutory capital and surplus (including asset valuation reserves) is approximately $1.7 billion (as of December 31, 2019).

## Met Tower Life businesses

Met Tower Life has a diversified mix of business.

The majority of Met Tower Life's legacy business is individual life insurance, which has been in force for many years. This legacy life insurance business acts as a natural hedge for our annuity business. Additionally, Met Tower Life's in-force business is predominantly not composed of products typically associated with earnings volatility, such as long term care insurance. Today, in addition to group annuities for pension risk transfer, Met Tower Life issues for MetLife's Retirement & Income Solutions business institutional income annuities, structured settlement annuities, stable value guaranteed investment contracts, and corporate- and bank-owned life insurance. Prospectively, it will issue funding agreements.[3]

| Business mix (as of December 31, 2019) | Liability amount ($ millions) | Percentage |
| --- | --- | --- |
| Life | $10,393 | 68% |
| Deposit type contracts | $2,820 | 19% |
| Individual annuities | $1,800 | 12% |
| Other* | $191 | 1% |
| Group annuities | $9 | 0% |
| **Total policy holder liabilities** | **$15,214** | **100%** |

*Includes accidental death riders on life insurance policies, disability, accident & health, and other miscellaneous reserves.

**Note:** Categories may not equal total due to rounding.

2

## General account investment portfolio

$18,807 million, as of December 31, 2019



- Bonds: 66.9%
- Mortgage loans: 15.5%
- Policy loans: 9.4%
- Cash & short-term investments: 1.8%
- Real estate: 1.3%
- Stocks: 0.4%
- All other assets: 4.8%*

\* Includes derivatives, receivables for securities, and other invested assets.
**Note:** Categories may not total 100% due to rounding.

| General account invested assets as of December 31, 2019 | ($ millions) |
|---|---|
| Bonds | $12,579 |
| Mortgage loans | $2,920 |
| Policy loans | $1,763 |
| Cash & short-term investments | $338 |
| Real estate | $238 |
| Stocks | $70 |
| All other assets* | $899 |
| **Total invested assets** | **$18,807** |

\* Includes derivatives, receivables for securities, and other invested assets.
**Note:** Categories may not equal total due to rounding.

As of December 31, 2019, 94.99% of Met Tower Life's bond portfolio was investment grade.

## Bond quality

$12,579 million, as of December 31, 2019



- Investment grade (NAIC class 1–2): 94.99%
- Medium grade (NAIC class 3): 3.77%
- High yield (NAIC class 4–6): 1.24%

**Note:** Categories may not total 100% due to rounding.

## About Metropolitan Tower Life Insurance Company

MetLife's Retirement & Income Solutions division, the company's institutional retirement business, issues products through Metropolitan Life Insurance Company and Metropolitan Tower Life Insurance Company, two wholly owned subsidiaries of MetLife, Inc. Retirement & Income Solutions issues products for transferred pension liabilities, stable value, institutional income annuities, benefits funding and structured settlements.

On April 27, 2018, Metropolitan Tower Life Insurance Company (Met Tower Life) was re-domesticated to Nebraska, and General American Life Insurance Company, another MetLife, Inc., subsidiary, was merged with and into Met Tower Life. Met Tower Life is licensed in all 50 states. MetLife believes that being able to write new contracts out of Met Tower Life will allow it to offer its customers more competitive pricing and enable maximum flexibility from a regulatory standpoint, while ensuring that participant benefits are protected by another financially strong MetLife insurance operating company.

#### Safe Harbor Statement

This document may contain or refer to forward-looking statements. Forward-looking statements give expectations or forecasts of the future using terms such as "anticipate," "estimate," "expect," "project," "intend," "plan," "believe," "will," and other terms tied to future periods.  Results could differ materially from those expressed or implied in the forward-looking statements. Forward-looking statements are based on assumptions and expectations. They involve risks and uncertainties, including the "Risk Factors" MetLife, Inc. describes in its U.S. Securities and Exchange Commission filings. The company has no obligation to correct or update any forward-looking statement. Parts of this document may include additional information on forward-looking statements.

The document may also contain measures that are not calculated based on accounting principles generally accepted in the United States of America, or GAAP.  Parts of this document, the Investor Relations portion of MetLife's website (www.metlife.com), or other parts of that website include information on non-GAAP financial information.

[1]MetLife, Inc., is also the holding company parent of Metropolitan Life Insurance Company (MLIC) and other MetLife affiliates.

[2]Current as of March 16, 2019. Ratings apply to Met Tower Life's financial strength and claims-paying ability and not the performance of any of its products. For current ratings and a more complete analysis of the financial strength of Met Tower Life, please go to https://www.metlife.com/about-us/corporate-profile/ratings/.

[3]Guarantees are subject to the financial strength and claims-paying ability of Metropolitan Tower Life Insurance Company.

This brochure is not intended to be, and should not be construed as, legal and/or tax advice. You should consult with your independent legal and tax advisors in connection with your consideration of purchasing an annuity to transfer plan liabilities.

